**Wallace LONDON and Clemco Products, Inc., Plaintiffs–Appellants,**

v.

**CARSON PIRIE SCOTT & CO., Marshall Field Stores, Inc., W. Bell & Co., Inc., and Samsonite Corporation, Defendants–Appellees.**

No. 91–1189.

United States Court of Appeals, Federal Circuit.

Oct. 17, 1991.

Harry J. Roper, Roper & Quigg, Chicago, Ill., argued for plaintiffs-appellants. With him on the brief were James P. Naughton and Maureen C. O'Connor. Also on the brief was David S. Schaffer, Jr., Neal, Gerber & Eisenberg, Chicago, Ill., of counsel.

Patrick G. Burns, Welsh & Katz, Ltd., of Chicago, Ill., argued for defendants-appellees. With him on the brief was A. Sidney Katz.

Before LOURIE, Circuit Judge, SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.

LOURIE, Circuit Judge.

Wallace London and Clemco Products, Inc. (London) appeal the judgment of the United States District Court for the Northern District of Illinois, No. 85 C 9712 (January 3, 1991), granting summary judgment in favor of Carson Pirie Scott & Co., Marshall Field Stores, Inc., W. Bell & Co., Inc., and Samsonite Corporation (Samsonite), on a charge of infringement of certain claims of United States Patents 3,566,456 ('456) and Re. 31,075 ('075). We affirm.

## BACKGROUND

Both the '456 patent and the '075 patent concern clamps used to hang clothes securely in travel garment bags. The '456 patent, issued on March 2, 1971, relates to a clamp with two metal channels, C-shaped in cross-section, positioned horizontally, with open edges facing one another and pivotally connected at one end by a hinge pin. Two strips of resilient material fit into the open edges of the channels. The clamp is adapted to grip the shank of a clothes hanger below the hook and contemplates that the hanger extends outside the garment bag. Claim 1, which is at issue along with dependent claim 2, reads:

1. A bifurcated clamp for embracing a plurality of garment hangers adapted to be positioned within a garment bag, each hanger having an upstanding shank between the supporting hook for the hanger and the support for the garment, and said upstanding shanks adapted to be spaced along the length of said clamp, said clamp comprising:

(a) a pair of congruous C-shaped channels pivotally mounted to each other at one end thereof, with the open edge of each channel facing the other.

(b) a strip of resilient material seated within each channel and protruding beyond the open edge thereof, and

(c) a latching device on the opposite free ends of said channels for alternately permitting the spreading of said

channels or the clamping thereof together for embracing the spaced shanks of the spaced garment hangers to attain an integrated assembly thereof, at least one of said channels having fastening means thereon to permit the ready affixation thereof to the garment bag to provide a tight seal for the bag and reliable support for the garment hangers therein.

The '075 patent also claims a clamp to hold clothes hangers together inside a garment bag. Unlike the '456 patent, however, the clamping jaws of the '075 patent are positioned vertically, not horizontally. Also, a reinforcing sleeve surrounds the hinge pin between the internal surfaces of the channels. The clamp is operated by inserting the hook portion of a clothes hanger between the two resilient strips when the device is open. After the hook is inserted, the lower channel is rotated upwardly around the hingepin to close the clamp. The latching device holds the hanger in place.

Although both Claims 1 and 9 of the '075 patent are appealed, claim 9 is representative[1] and it reads as follows:

9. In a frame type garment bag assembly having means on the outside of the top thereof for suspending the bag while loading therein or unloading therefrom a plurality of garments on supports therefor, each comprising a vertical wire shank extending upwardly from the center of the support and terminating in a downwardly extending curved hook portion, and means for securely locking a plurality of the garment supports entirely within the bag, the improvement comprising:

(a) a jointed clamp disposed in a generally vertical plane and having an upper channel fixed to the top of the garment bag and a lower channel pivotally mounted to said upper channel at one end thereof, with the open edge of each channel facing the other,

(b) a horizontally disposed hinge pin at said end extending beyond the external surfaces of said channels,

(c) a reenforcing sleeve surrounding said hinge pin between the internal surfaces of said channels,

(d) a strip of resilient material seated within each channel and protruding beyond the open edge thereof,

(e) a latching device of high mechanical efficiency at the opposite end of said jointed clamp for alternately permitting the spreading of said channels or the clamping thereof together, for embracing the hook portions of the garment supports to maintain them in fixed position, and

(f) means extending between said last-mentioned upper channel and said lower channel for limiting the pivotal movement of the latter in the open position of said jointed clamp, to provide an inclined support for the hook portions of the garment supports in the course of loading and unloading the latter into and from the garment bag.

The device which London alleges infringes its patents, Samsonite's "locking trolley" clamp, is an embodiment of United States Patent 4,618,058, issued to Samsonite in 1986. A drawing of Samsonite's clamp is reproduced below.

1. Claim 1 shares with Claim 9 the same preamble and paragraphs (b), (c), (d), and (e). It differs in paragraphs (a) and (f), and has an additional paragraph (g). However, these differences do not warrant treating the claims differently here.

The Samsonite clamp has a C-shaped canti-levered member (K), secured at one end to the frame of a structured garment bag by rivets. The other end of the C-shaped member forms a bottom channel (D) containing a strip of resilient material (C), such as rubber, on which the hanger hooks are placed. The bottom channel is positioned across from an upper channel (E), which also contains a strip of resilient material. The upper channel is pivotally secured to the C-shaped member by a rivet hinge pin (F). A camming device (G) is secured to the end of the upper channel opposite the hinge pin, which, when closed, pushes the upper channel toward the lower channel, thus securing the hangers in the trolley.

London brought suit, alleging that Samsonite's clamp infringed literally and under the doctrine of equivalents; it also charged Samsonite with unfair competition and violation of the Lanham Act and state deceptive trade practice law. Both parties moved for summary judgment relating to infringement. The district court granted Samsonite's motion. London appeals only that part of the district court's judgment relating to infringement under the doctrine of equivalents.

## DISCUSSION

A grant of summary judgment under Fed.R.Civ.P. 56 is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). Since one principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses," Fed.R.Civ.P. 56 requires that the nonmoving party "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). There can be "no genuine issue as to any material fact" where the nonmoving party's proof is deficient in meeting an essential part of the applicable legal standard, since such failure renders all other facts immaterial. *Id.* at

323, 106 S.Ct. at 2552. Thus, in determining whether the district court correctly granted Samsonite's motion for summary judgment of non-infringement of the '456 and '075 patents, we initially must determine whether London's proof was sufficient to satisfy the legal standard for infringement under the doctrine of equivalents. *Johnston*, 885 F.2d at 1577, 12 USPQ2d at 1383–84. Such proof is sufficient if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. The Doctrine of Equivalents

■ The standard for infringement under the doctrine of equivalents has often been articulated: infringement may be found if an accused device performs substantially the same function in substantially the same way to achieve substantially the same result. *E.g., Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). This equitable doctrine evolved from a balancing of competing policies, each of which supports the Constitutional purpose of promoting the "useful arts." U.S. Const. art. I, § 8, cl. 8.

On the one hand, claims must be "particular" and "distinct," as required by 35 U.S.C. § 112, so that the public has fair notice of what the patentee and the Patent and Trademark Office have agreed constitute the metes and bounds of the claimed invention. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236, 224 USPQ 418, 424 (Fed.Cir.1985).

■ On the other hand, the patentee should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the claims. *See Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 856–57, 9 USPQ2d 1289, 1291 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1068, 109 S.Ct. 2069, 104 L.Ed.2d 634 (1989) (citing the additional opinions in *Pennwalt* as exhaustively discussing these competing policies). Accordingly, the doctrine of equivalents emerged. Although designing or inventing around patents to make new inventions is encouraged, piracy is not. Thus, where an infringer, instead of inventing around a patent by making a substantial change, merely makes an insubstantial change, essentially misappropriating or even "stealing" the patented invention, infringement may lie under the doctrine of equivalents. *See Graver Tank*, 339 U.S. at 609–10, 70 S.Ct. at 856–57, 85 USPQ at 331; *Lockheed Aircraft Corp. v. United States*, 553 F.2d 69, 82, 213 Ct.Cl. 395, 193 USPQ 449, 461 (1977).[2]

Application of the doctrine of equivalents is the exception, however, not the rule, for if the public comes to believe (or fear) that the language of patent claims can never be relied on, and that the doctrine of equivalents is simply the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims, then claims will cease to serve their intended purpose. Competitors will never know whether their actions infringe a granted patent.

The present case is one in which the claims mean what they say. Their effectiveness cannot be extended to cover the devices before us, which do not meet the claim limitations.

### B. Claims 1 and 2 of the '456 Patent

■ "It is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Lemelson v. United States*, 752 F.2d 1538, 1551,

---

**2.** The implementation of this doctrine is through the *Graver Tank* function-way-result test. *Perkin–Elmer Corp. v. Westinghouse Elec.*

*Corp.*, 822 F.2d 1528, 1531–32, 3 USPQ2d 1321, 1323–24 (Fed.Cir.1987).

224 USPQ 526, 533 (Fed.Cir.1985). There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device. *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 798, 17 USPQ2d 1097, 1101 (Fed.Cir.1990). The district court in this case found that the accused Samsonite clamp lacked necessary limitations of the claims and therefore did not infringe under the doctrine of equivalents. We conclude that the court was correct.

Claim 1 requires a latching mechanism for permitting the channels of the device to be clamped together "for embracing the spaced shanks of the spaced garment hangers." The shank is defined in the preamble as that portion of the hanger "between the supporting hook for the hanger and the support for the garment." This is not merely a suggested use or "clarifying language," as London argues, but rather a limitation supported by structure which must be satisfied by Samsonite's clamp, either literally or equivalently if infringement is to be found. The district court concluded that grasping the hanger shanks is fundamental to the way which the '456 claimed device works. The court concluded that because the Samsonite trolley does not grasp the hanger shanks, but grasps the hooks, it does not work in substantially the same way as the claimed device. We agree.

London argues that the evidence it submitted to the district court on this issue, the Smith declaration, raised a genuine issue of material fact, precluding a grant of summary judgment. Smith hypothesized that if the shank of an ordinary hanger were bent at about a 90 degree angle, the Samsonite trolley could grasp the shank. Such an argument does not create a genuine issue for trial. The district court correctly found that a hanger with a straightened hook is no longer a hanger, and that the Samsonite clamp is not configured to grasp hanger shanks.

Moreover, in interpreting the claims, the district court also concluded that the "tight seal" language in Claim 1 limits the invention to a clamp that seals an opening in the garment bag. We see no error in this interpretation. Indeed, the '456 specification provides that "[t]he aim of the present invention [is] to provide a clamping assembly ... which may be incorporated in waterproof garment bags of different types to enable the retention of the garment hangers within the bag with the hooks and stem protruding therefrom in a manner to secure *a tight seal of the bag* at said opening...." '456 patent, col. 2 lines 11–17 (emphasis added). As the district court noted, the "tight seal" limitation was added by London at the suggestion of the Examiner, in order to, in London's words, "avoid the art of record and in order to place the application in condition for allowance." The parties dispute whether the "tight seal" limitation refers to the seal formed when the pieces of the resilient material are pressed together with the clamp in the closed position, or whether the limitation refers to the seal formed by the fastening means between at least one C-channel and the material in the garment bag. However, this dispute is irrelevant and does not create a genuine issue for trial. Whether this seal is between the pieces of the resilient material or on the fastening means does not matter; the claimed invention seals the garment bag and the Samsonite device does not. Absent this element, there can be no infringement. *Becton Dickinson,* 922 F.2d at 798, 17 USPQ2d at 1101. We conclude that no reasonable jury could have found otherwise.

Our affirmance with respect to Claim 1 of the '456 patent also requires affirmance with respect to dependent Claim 2. *See Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1552, n. 9, 10 USPQ2d 1201, 1207 n. 9 (Fed.Cir.1989). ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.")

**C.  *Claims 1 and 9 of the '075 Patent***

London argues that summary judgment as to the '075 patent was improper because, *inter alia,* the evidence showed that Samsonite's clamp has a fixed lower channel and pivoting upper channel which is equiva-

lent to the '075 patent's claimed arrangement of a fixed upper channel and a pivoting lower channel.

Claim 9 of the '075 patent requires that the upper channel be "fixed" to the top of the garment bag. Claim 1 also requires an upper channel which is "fixed" to a bracket support, which is itself affixed to the top of a garment bag. The claim is further limited by requiring that the upper channel be "fixed" in a "substantially horizontal position." As the district court correctly found, the Samsonite clamp does not equivalently satisfy this limitation. In the Samsonite clamp, the upper channel is not fixed, but instead pivots. This element cannot be equivalent to the claimed upper channel without erasing the "fixed" and "substantially horizontal position" limitations from Claims 1 and 9. As the district court realized, the accused device works in a substantially different way so that these claim limitations are not equivalently satisfied by the upper channel. Thus, the district court correctly found that this claim is not infringed by the Samsonite clamp.

Claims 1 and 9 of the '075 patent also require a lower channel which is "pivotally mounted" to the upper channel, as well as means for limiting the pivotal movement of the lower channel to provide an "inclined support" for the hook portions of the hangers. In the Samsonite clamp, the lower channel is an integral part of the C-shaped frame, and is in a fixed horizontal position. This element does not operate in the same way as the claimed lower channel because Samsonite's lower channel is fully fixed.

London's patent claims must be interpreted in view of the specification when considering how the device works. London's '075 clamp works by releasing the pivoted lower channel so that it drops to provide an inclined support for the hangers. The weight of the hangers and the clothes is on the lower channel. Samsonite points out that the user in fact must ensure that the hangers do not slide off the lower channel when it is released, and apparently two hands and considerable force may be needed to lift the weighted lower channel and secure it against the fixed upper channel.

In contrast, the Samsonite clamp works in a substantially different way. The lower channel is fixed horizontally. Hangers placed on the lower channel tend not to slide off the lower channel, even when the trolley is open, and the user can easily close the trolley with one hand, without lifting the weight of the hangers. Because of these substantial differences in the way the two clamps work, the district court did not err in finding that there is no infringement of claims 1 and 9 of the '075 patent. Moreover, the accused device lacks the claimed feature of limiting the pivotal movement of the lower channel to provide an inclined support for the hook portion of the hangers; it works in a substantially different way, with a fixed horizontal lower member which is part of a unitary C-shaped cantilevered frame. We conclude that, based on the record, no reasonable jury could return a verdict for London with respect to the '075 patent.

London did not raise a genuine issue of material fact as to whether the Samsonite device has the equivalent of (1) a lower channel which pivots to form an inclined surface when released and (2) an upper channel which is fixed in a horizontal position. London's attempt to characterize his claims as a combination of two channels, one of which moves and one of which is fixed, ignores the significant limitations in the claims. Samsonite's clamp is substantially different from that claimed by the '075 patent, and the district court was correct in concluding that the Samsonite clamp does not work "in the same way" within the meaning of *Graver Tank*.

We have reviewed the other issues raised by London and find them to be without merit.

## CONCLUSION

No genuine issue of material fact was presented with respect to infringement of

London's '456 and '075 patents by Samsonite's clamp. Further, because the evidence presented showed that Samsonite's clamp did not meet the limitations in the asserted claims, literally or equivalently, Samsonite was properly entitled to summary judgment as a matter of law.

AFFIRMED.