954 F.2d 734
 22 U.S.P.Q.2d 1945
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
EXTREL FTMS, INC., Plaintiff/Cross-Appellant,
v.
BRUKER INSTRUMENTS, INC., Defendant-Appellant.
 Nos. 91-1216, 91-1222.
 United States Court of Appeals, Federal Circuit.
 Jan. 24, 1992.
 
 Before NIES, Chief Judge, and RICH and ARCHER, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Bruker Instruments, Inc. (Bruker) appeals from the January 25, 1991 final judgment of the U.S. District Court for the Western District of Wisconsin, Case No. 90-C-305-S, holding inter alia that Bruker had infringed, under the doctrine of equivalents, claims 1, 13-17 and 19-43 of Extrel FTMS, Inc.'s (Extrel's) U.S. Patent No. 3,937,955 ('955 patent), titled "Fourier Transform Ion Cyclotron Resonance Spectroscopy Method and Apparatus." Extrel cross-appeals from the district court's refusal to award it damages based upon a theory of lost profits. We reverse the liability judgment.
 
 DISCUSSION
 
 2
 Ion cyclotron resonance mass spectrometers (ICRs) are sophisticated scientific instruments used in the analysis of chemical substances. Briefly, ICR spectrometry involves the formation of ions from a sample to be identified, and analysis of the mass-to-charge ratios of those ions. Extrel's '955 patent discloses apparatus and methods directed to the application of Fourier transformation (FT), a signal processing technique, to ICR spectrometry. All ICRs, indeed all mass spectrometers, require the formation of ions. Notably, the '955 patent discloses an FT/ICR having an "internal ion source," i.e., the formation, trapping, and analysis of the ions all occur within the analysis cell itself.
 
 
 3
 The case for infringement is based on the fact that Bruker, a competitor of Extrel's in the ICR market, delivered a single FT/ICR, referred to as the Bruker CMS-47X, to Miami University of Ohio (Miami) in April, 1990. In contrast with the FT/ICR disclosed in the '955 patent, Bruker's CMS-47X employs an "external ion source" in which ions are formed outside of the analysis cell and transferred to it by means of a series of electrically charged plates and tubes called "ion optics." Based upon the sale to Miami, Extrel sued Bruker for infringement of the '955 patent and another Extrel patent, No. 4,581,533 ('533 patent), not at issue here.
 
 
 4
 Following a bench trial, the district court found with respect to claim 1[1] of the '955 patent that at the time of application therefor, the inventors believed that the formation of ions within the ICR cell "conferred significant benefits to the practice of FT/ICR," and that a "deliberate design choice" to employ an internal ion source was made in drafting claim 1, which includes "an express recitation that to practice the invention the instrument must contain ion [forming] means for ionizing gases located in said ion cyclotron resonance cell...." In contrast, the district court found, "[t]he Bruker CMS-47X instrument does not contain ion forming means for ionizing gases located in the ICR cell." Accordingly, the district court concluded that Bruker's instrument did not literally infringe claim 1.
 
 
 5
 Turning to Extrel's allegation of infringement of claim 1 under the doctrine of equivalents, the district court found that
 
 
 6
 [t]he external ion source of the Bruker CMS-47X performs substantially the same function as the ion forming means of Claim 1 of the '955 patent. It makes ions to be analyzed. The Bruker CMS-47X external ion source performs in substantially the same manner as the ion forming means of Claim 1 of the '955 patent, making ions by electron beam or other means. The CMS-47X external ion source also achieves substantially the same result as the ion forming means of Claim 1 of the '955 patent. Ions to be analyzed are made.
 
 
 7
 (Emphasis added). The district court concluded that Bruker's CMS-47X infringed claim 1 (and claims 13-17 and 19-24 depending therefrom) under the doctrine of equivalents "because it performs substantially the same function in substantially the same way to achieve substantially the same overall result" as the device of claim 1.[2]
 
 
 8
 Independent claim 25,[3] the district court stated, "requires the presence of an evacuable chamber suitable for receiving a gaseous sample to be ionized by ion forming means." Bruker's CMS-47X "consists of a series of joined components each of which comprises a separate and different evacuable chamber having its own vacuum pumping devices; a source region, a separate ion transfer region and the ICR analyzer cell region," the district court found. No literal infringement had occurred, the district court concluded, because the "evacuable chamber in Claim 25 of the '955 patent was plainly not contemplated to include a series of free interconnecting, differentially pumped components as exist in the Bruker CMS-47X." The district court went on to find, however (with no further explanation), that
 
 
 9
 [t]he evacuable housing of the Bruker CMS-47X performs substantially the same function of providing a low pressure region for the ion source and the ICR trap cell in substantially the same way to achieve the same result as the evacuable chamber in Claim 25 of the '955 patent.
 
 
 10
 Therefore, the district court concluded, claim 25 (and claims 26-31 depending therefrom) were infringed under the doctrine of equivalents.
 
 
 11
 A finding of equivalence is a determination of fact, Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609, 85 USPQ 328, 331 (1950), which we review for clear error. Claim interpretation, however, is a legal question which we review de novo. Intel Corp. v. U.S. Int'l Trade Comm'n, 946 F.2d 821, 835, 20 USPQ2d 1161, 1174 (Fed.Cir.1991).
 
 
 12
 To establish infringement, every limitation set forth in a claim must be found in the accused device exactly or by a substantial equivalent. Becton Dickinson and Co. v. C.R. Bard, Inc., 922 F.2d 792, 796, 17 USPQ2d 1097, 1099 (Fed.Cir.1990). When considering infringement under the doctrine of equivalents, all limitations of the claim are material and must be satisfied at least equivalently in the accused device in order to find that the device works in "substantially the same way" as the claimed device. Id. at 798 (quoting Graver Tank, 339 U.S. at 608, 85 USPQ at 330).
 
 
 13
 We agree with Bruker that, in construing the "ion forming means" limitation of claim 1, the district court effectively ignored the remainder of that limitation which set forth the function to be performed by the ion forming means, namely, "for ionizing gases located in said ion cyclotron resonance cell." While a finding of infringement under the doctrine of equivalents involves expansion of the scope of patent protection beyond the literal words of the claims for equitable reasons, see London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538, 20 USPQ2d 1456, 1459 (Fed.Cir.1991), such expansion is not synonymous with ignoring claim limitations.
 
 
 14
 Having carefully reviewed the record, we are unable to find sufficient evidence to sustain the district court's finding of equivalency with respect to claim 1. There is scarcely more than the evidence presented in Extrel's literal infringement case; i.e., the summary testimony of Extrel's Dr. Ghaderi (a co-inventor of the '533 patent not at issue here) that he found each element of claim 1 present in the accused device. When asked by the district court to provide an "analogy to everyday life" with respect to the issue of internal versus external ion source, Dr. Ghaderi proposed
 
 
 15
 an air conditioner placed on the window in a room as opposed to central air, where the source--the air conditioner is located in a basement or on the roof somewhere, and as the air--cold air is ducted in, the end result is basically the same.
 
 
 16
 (Emphasis added). Although real-world analogies are certainly helpful in simplifying complex technical issues for a court, conclusory testimony such as this, without more, is insufficient to sustain the district court's finding here of infringement under the doctrine of equivalents.
 
 
 17
 Moreover, the district court's findings with respect to Bruker's sale of the CMS-47X to Miami tend strongly to weigh against a finding of infringement under the doctrine of equivalents. The district court found that Dr. Cassady, the Miami professor for whom the device was purchased, "preferred an external source instrument," and that an external source instrument was "expressly requested" in Miami's request for bids. In fact, if an external source device such as Bruker's had not been available, the district court found, "Dr. Cassady would have bought no machine rather than buy Extrel's product...." Contrary to Extrel's argument that Dr. Cassady's preference for an external source instrument is "irrelevant" to the equivalency analysis, evidence that persons reasonably skilled in the art would have known whether or not disputed elements of the accused device are interchangeable with those claimed is an important (though not the sole) factor in determining equivalency under the doctrine of equivalents. See Graver Tank, 339 U.S. at 609, 85 USPQ at 331.
 
 
 18
 Extrel urges that the '955 patent is "pioneering" in nature, that the '955 claims were allowed on the first office action, and, therefore, that the claims are entitled to a broad range of equivalents. We disagree. While the '955 patent has been recognized as a significant advance with respect to the application of Fourier transform techniques to ICR spectrometry, the internal ionization means disclosed in the '955 patent is unquestionably old. For example, U.S. Patent No. 3,742,212 to McIver, discussed in the background section of the '955 specification, discloses a "trap" cell in which ions are both formed from a gaseous sample and analyzed.
 
 
 19
 We agree with the district court that the "evacuable chamber" limitation of claim 25, properly interpreted in view of the language and figures of the '955 specification (there is no prosecution history), literally excludes Bruker's series of joined, separately pumped compartments which, through a series of "ion optics," transports ions from their external source to the analysis cell. We find the record lacking, however, of meaningful support for the district court's finding that the Bruker arrangement, which it had previously found was "plainly not contemplated" by the '955 patent, operated in a substantially similar way to the evacuable chamber of claim 25. For example, the primary testimonial evidence in support thereof is the following colloquy between Extrel's counsel and Dr. Ghaderi:
 
 
 20
 Q. Dr. Ghaderi, ... the claims of the 955 patent call for a vacuum chamber or an evacuable chamber, do they not?
 
 
 21
 A. Yes, they do.
 
 
 22
 Q. In your opinion, does it matter, does it make a distinction to take a vacuum chamber and divide it into compartments which communicate with one another?
 
 
 23
 A. No, it doesn't.
 
 
 24
 Q. Is it still a vacuum chamber?
 
 
 25
 A. Yes, it is.
 
 
 26
 As we have concluded with respect to claim 1, this sort of conclusory testimony is not sufficient to support the district court's finding of infringement of claim 25 under the doctrine of equivalents.
 
 
 27
 As this court has recently stated, application of the doctrine of equivalents is the exception, not the rule. London, 946 F.2d at 1538, 20 USPQ2d at 1458. In the present case, Bruker's actions did not involve "insubstantial changes" by an "unscrupulous copyist." See Graver Tank, 339 U.S. at 607, 85 USPQ at 330. The changes which avoided literal infringement were not merely "colorable." Id. at 612, 85 USPQ at 332. On the record before us, we are left with "a firm and definite conviction that a mistake has been made." See Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1261, 9 USPQ2d 1962, 1970 (Fed.Cir.1989).
 
 
 28
 Extrel argues that, regardless of infringement under the doctrine of equivalents, we may uphold the judgment below on the ground that Bruker's CMS-47X literally infringed the claims of the '955 patent.[4] Extrel maintains that the district court erred in finding no literal infringement of claim 1, because the court interpreted the "ion forming means for ionizing gases located in said ion cyclotron resonance cell" limitation thereof as requiring that the gases (as opposed to the "ion forming means") be located in the analyzer cell when ionization takes place. We see no error in the district court's interpretation of claim 1, which is clearly contemplated by the '955 specification and drawings. Likewise, we concur in the district court's finding that claim 25 was not literally infringed.
 
 
 29
 Having reversed the judgment of liability for infringement under the doctrine of equivalents with respect to all claims at issue, we need not reach Extrel's cross-appeal as to lost profits.
 
 
 30
 No costs.
 
 
 
 [1]
 Independent claim 1 of the '955 patent reads as follows, with the disputed limitation emphasized:
 
 
 [1]
 A Fourier transform ion cyclotron resonance mass spectrometer comprising:
 an evacuable chamber suitable for receiving a gaseous sample to be mass analyzed;
 evacuation means connected to said evacuable chamber for reducing the atmospheric pressure in said chamber to a predetermined level;
 an ion cyclotron resonance cell, including a plurality of electrode plates, mounted in said evacuable chamber;
 ion forming means for ionizing gases located in said ion cyclotron resonance cell;
 magnetic field means for creating a unidirectional magnetic field, said magnetic field means mounted so that said unidirectional magnetic field passes through said ion cyclotron resonance cell in a predetermined direction;
 voltage means connected to said plurality of plates of said ion cyclotron resonance cell, said voltage means generating voltages of a level and a polarity adequate to trap substantially all ions of a given charge sign formed by said ion forming means in said ion cyclotron resonance cell, said unidirectional magnetic field means causing said trapped ions to move orbitally at angular frequencies dependent on the mass-to-charge ratio of individual ions;
 broad-band excitation means connected to said ion cyclotron resonance cell for producing a broad-band electric field at right angles to said unidirectional magnetic field, said broad-band electric field exciting all ions trapped within said ion cyclotron resonance cell that have a mass-to-charge ratio falling within a predetermined range;
 broad-band detection means connected to said ion cyclotron resonance cell for simultaneously detecting the number of ions of each different mass-to-charge ratio excited by said broad-band excitation means and for generating a single time domain analog signal containing information related to the magnitude and nature of said numbers;
 digitizing means connected to said broad-band detection means for digitizing said time domain analog signal related to the magnitude and nature of the number of ions of each different mass-to-charge ratio so as to produce a time domain digital signal related to the magnitude and nature of said numbers; and,
 Fourier transform means connected to said digitizing means for transforming said time domain digital signal into a frequency domain signal containing information about the numerical magnitude and frequency of excited ions of each different mass-to-charge ratio trapped in said ion cyclotron resonance cell.
 
 
 [2]
 A similar conclusion of infringement under the doctrine of equivalents was reached with respect to method claims 32-41 and 43, which include the step of "ionizing a gas sample located within an analyzer cell mounted in an evacuable chamber during an ionizing period."
 
 
 [3]
 Independent claim 25 provides, again with the disputed limitation emphasized:
 
 
 [25]
 In an ion cyclotron resonance mass spectrometer wherein an ion cyclotron resonance cell formed of a plurality of plates is mounted in an evacuable chamber suitable for receiving a gaseous sample to be ionized by an ion-forming means, said ions being trapped in orbits within said ion cyclotron resonance cell by unidirectional magnetic field in combination with a static electric field, the improvement comprising:
 broad-band excitation means suitable for applying a broad-band electric field at right angles to said unidirectional magnetic field to said ions trapped in said ion cyclotron resonance cell so as to accelerate all trapped ions that lie within a predetermined mass-to-charge ratio range to larger radius orbits; and,
 broad-band detection means suitable for detecting said accelerated ions and producing a time domain signal containing information related to the number of ions of specific mass-to-charge ratios which are accelerated by said broad-band electric field.
 
 
 [4]
 Although Extrel's notice of cross-appeal was specifically limited to the issue of lost profits damages, Extrel as appellee may urge, in support of the judgment below, any matter appearing in the record, even though its argument involves an attack upon the district court's reasoning as to literal infringement. Extrel does not attack the ultimate judgment of infringement, but merely asserts additional grounds for its affirmance. See United States v. American Ry. Express Co., 265 U.S. 425, 435-36 (1924). The cases cited by Bruker to the contrary are not on point, because they all deal with the sufficiency of an appellant's notice of appeal. See, e.g., Durango Assoc., Inc. v. Reflange, Inc., 912 F.2d 1423, 1425 & n.*, 15 USPQ2d 1910, 1912 & n.* (Fed.Cir.1990)