**ULTRADENT PRODUCTS, INC.,**
**Plaintiff–Appellee,**

v.

**LIFE–LIKE COSMETICS, INC. d/b/a Life–Like Dental Products and Rodney F. Ogrin, Defendants–Appellants.**

No. 97–1162.

United States Court of Appeals,
Federal Circuit.

Oct. 10, 1997.

**1066**

Thomas R. Vuksinick, Workman, Nydegger & Seeley, Salt Lake City, UT, argued, for plaintiff-appellee. On the brief with him was H. Ross Workman.

H. Dickson Burton, Trask, Britt & Rossa, Salt Lake City, UT, argued, for defendants-appellants. On the brief with him were Allen C. Turner and Edgar R. Cataxinos. Of counsel was Thomas J. Rossa.

Before PLAGER, CLEVENGER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Life–Like Cosmetics, Inc., and its president and sole owner, Rodney F. Ogrin (collectively "Life–Like"), appeal from a final judgment of the United States District Court for the District of Utah entered after a jury trial. The district court entered judgment in favor of the patentee, Ultradent Products, Inc. ("Ultradent"), on all contested issues. We affirm in part, reverse in part, and remand for further proceedings.

I

The technology at issue in this case relates to dental compositions and methods for bleaching tooth surfaces in order to whiten teeth. In the district court, Ultradent asserted claims of three related patents: U.S. Patent No. 5,098,303 ("the '303 patent"), entitled "Method For Bleaching Teeth"; U.S. Patent No. 5,234,342 ("the '342 patent"), entitled "Sustained Release Method for Treating Teeth Surfaces"; and U.S. Patent No. 5,376,006 ("the '006 patent"), entitled "Dental Bleaching Compositions and Methods for Bleaching Teeth Surfaces." Ultradent has marketed its dental bleaching composition since 1990 under the brand name Opalescence.

The focus of the invention disclosed in the three patents is to enable a patient to keep a bleaching composition in contact with the teeth for an extended period of time. Merely using a bleaching agent in a dental tray would not achieve that goal because the bleaching agent would become diluted by saliva and would lose contact with the teeth. The invention contemplates a composition that is highly viscous, sticky, and insoluble in

saliva. That composition is used in conjunction with a dental tray having reservoirs for holding the dental composition against the tooth surfaces.

The critical language of the independent claims of both the '303 and '342 patents is similar. Both patents claim a method for bleaching teeth that employs "a matrix material into which the dental bleaching agent ['sustained release dental bleaching agent' in the '342 patent] is dispersed, said matrix material including carboxypolymethylene [a thickening agent] in the range from about 3.5% to about 12% by weight of the dental bleaching composition ['sustained release dental bleaching composition' in the '342 patent]."

The '006 patent claims both a method and a composition for bleaching. Each of the asserted independent claims contains a limitation describing the dental composition as having a "matrix material" that is of "sufficiently high viscosity and low solubility in saliva that the matrix material provides for the dental bleaching agent to be in contact with the tooth surfaces over a period of time greater than about 2 hours" and that is sufficiently "tacky" or "sticky" to retain and hold a dental tray in place over the patient's teeth "for a period greater than about 2 hours without any significant mechanical pressure from the dental tray."

Life–Like manufactures and sells dental bleaching compositions. In February 1995, Ultradent brought suit in the district court asserting that Life–Like had infringed its rights under the '303, '342, and '006 patents. Life–Like filed a counterclaim in which it sought declaratory judgments of invalidity and noninfringement with respect to the asserted patents, and it subsequently filed a motion for partial summary judgment asserting that claims 1–4 and 6–15 of the '303 patent, all of the claims of the '342 patent, and claims 1, 4–8, 11–13, and 17–18 of the '006 patent are invalid as being anticipated by the prior art. Ultradent filed its own motion for summary judgment, urging the court to rule that the asserted claims are not invalid. After the parties briefed the issue of claim interpretation, the district court ruled on the summary judgment motions, holding that the asserted independent claims of the '303 and '342 patents are not invalid for anticipation under 35 U.S.C. § 102. Finding that there were disputed issues of material fact relating to the validity of the '006 patent, the court denied the parties' summary judgment motions as to that patent.

After trial, the jury returned verdicts in favor of Ultradent on all contested issues. Specifically, the jury found that the claims of the '006 patent are not invalid for anticipation and that the claims of all three patents are not invalid for obviousness. The jury further found that Life–Like's products infringed the asserted claims of all three patents. Acting in an advisory capacity on the issue of inequitable conduct, the jury found that no inequitable conduct occurred during the prosecution of the patents. The district court adopted the jury's finding on the inequitable conduct issue, entered judgment on the jury verdicts, and trebled the infringement damages under the authority of 35 U.S.C. § 284.

## II

■ Life–Like first challenges the district court's summary judgment ruling that the asserted claims of the '303 patent (claims 1–3, 8–9, and 13) and the asserted claims of the '342 patent (claims 1–3) are not invalid for anticipation. Life–Like contends that the district court erroneously interpreted the disclosures of the prior art and thereby erred in concluding, as a matter of law, that the claims of the '303 and '342 patents were not anticipated. We agree that the district court misapprehended the disclosures of the prior art, and we therefore reverse the court's entry of summary judgment in Ultradent's favor.

In addressing the summary judgment motion, the district court defined the term "carboxypolymethylene" to mean "a slightly acidic vinyl polymer with active carboxyl groups." That definition was taken directly from the specification of both patents. The court then held that the carboxypolymethylene recited in the claims must exist in the specified amounts (i.e., "about 3.5% to about 12%") at the time the composition is applied

to a patient's teeth in accordance with the claimed method for bleaching. Ultradent does not argue for a different interpretation on appeal, and we adopt the district court's interpretation.

The district court then looked to the prior art to determine whether the prior art anticipated the claims of the '303 and '342 patents. The pertinent prior art in this case consists of two U.S. patents. The first is U.S. Patent No. 3,657,413 to Rosenthal ("the Rosenthal patent"), entitled "Antiseptic Composition Containing Peroxide, Glycerol, and Carboxy-polymethylene Polymer." The Rosenthal patent, which was before the examiner during the prosecution of the '303 and '342 patents, discloses an antiseptic composition for the treatment of mucous membranes in the oral cavity. The patent discloses the use of urea peroxide as a source of hydrogen peroxide in a slowly dispersible solvent made of glycerol. To thicken the glycerol solvent, the Rosenthal patent discloses "the use of a carboxypolymethylene polymer, and preferably . . . the use of the glycerol-soluble neutralized salts of such a polymer." With respect to the viscosity of the composition, the Rosenthal patent further discloses:

> The specific amounts of polymer to be employed in order to achieve the desired viscosity depends, in part, upon factors such as the exact nature of the polymer, presence or absence of other co-solvents in the glycerol composition, and the like. In general, however, amounts of from about 0.05 to about 5, preferably from about 0.1 to about 2, and more preferably from about 0.4 to about 1.5, weight percent (based on total weight of the antiseptic compositions) of polymer are employed.

The Rosenthal patent provides two examples of the composition that include the relative quantities of each component; the two examples include 1.0% and 0.6% of carboxypolymethylene by weight.

The second prior art patent is U.S. Patent No. 4,990,089 to Munro ("the Munro patent"), entitled "Method and Material for Brightening Teeth." The Munro patent discloses a process for bleaching teeth using a dental tray that is filled with a bleaching composition and is applied to the tooth surfaces for a period of time. The Munro patent does not purport to disclose a new bleaching composition. Rather, it relies for bleaching on the peroxide compositions found in the prior art and discloses using the commercial product Proxigel for brightening teeth. Proxigel is the commercial embodiment of the Rosenthal patent, which the Munro patent specifically incorporates by reference.

The district court granted Ultradent's motion for summary judgment with respect to Life–Like's challenge to the validity of the '303 and '342 patents. The court held that "because none of the prior art references disclose the use of a composition containing slightly acidic vinyl polymer with active carboxyl groups, none anticipate claim 1 of the '303 [and '342 patents]." In so concluding, the court interpreted the Rosenthal patent (incorporated into the Munro disclosure) as disclosing only a neutral salt of a carboxypolymethylene polymer and not the "slightly acidic vinyl polymer with active carboxyl groups" referred to in the '303 and '342 patents.

The district court's interpretation of the Rosenthal patent's disclosure is incorrect and cannot support summary judgment in Ultradent's favor. Although Rosenthal states that a neutralized salt of carboxypolymethylene is the preferred form of the polymer, the disclosure of Rosenthal is not limited to the neutralized salt. Rather, the patent refers to carboxypolymethylene in general as the thickening agent for the claimed composition. The district court thus erred by construing the scope of the Rosenthal disclosure as limited to the preferred embodiment.

■ Ultradent argues that Life–Like waived its anticipation argument because it failed to point out to the district court that the Rosenthal patent discloses the use of carboxypolymethylene in acidic form as well as in the form of a neutralized salt. In its presentation to the district court, Life–Like argued that the claims of the '303 and '342 patents were anticipated by Rosenthal's disclosure of gels incorporating up to 5% carboxypolymethylene. As the Rosenthal patent explains, acidic carboxypolymethylene can be neutralized by adding a base, which makes the solution more suitable for use in

the mouth. Although the parties debate whether the product of the reaction between the acidic carboxypolymethylene and the base should be considered a salt, there is no doubt that the product described in both the Rosenthal patent and the '303 and '342 patent claims is an acidic form of carboxypolymethylene, even though the Rosenthal product contains a less acidic form of carboxypolymethylene than the initial acidic polymer. Setting aside the question of nomenclature—whether the ultimate product of the reaction between carboxypolymethylene and a base should be denominated a salt when in solution—there is no question that Rosenthal disclosed the use of carboxypolymethylene, preferably with the addition of a quantity of neutralizing base. Because that was the essence of Life–Like's argument on the issue of anticipation, we conclude that Life–Like did not waive its anticipation claim.

■ We also reject Ultradent's second contention, that the court's entry of summary judgment of non-anticipation is supported by the jury's finding that the same claims of the '303 and '342 patents are not invalid for obviousness. The correctness of the court's ruling against Life–Like on the legal question whether summary judgment of non-anticipation should be granted is not affected by the fact that the jury subsequently reached ·a verdict in Ultradent's favor on the issue of obviousness. Moreover, the district court's summary judgment ruling, which encompassed a legal determination that the Rosenthal reference disclosed only the salt form of carboxypolymethylene, was prejudicial to both of Life–Like's invalidity defenses, so the court's error cannot be regarded as harmless in light of the jury's verdict on obviousness.

Finally, Ultradent argues that the district court's entry of summary judgment is supportable because there is an "almost limitless number of antiseptic compositions within the ranges disclosed in Rosenthal" and the Munro patent only discloses using Rosenthal's commercial embodiment, Proxigel, which is 0.6% carboxypolymethylene. That, however, was not the ground on which the district court based its summary judgment order, and we decline Ultradent's invitation to af-firm the order on the quite different ground that Ultradent proposes.

The error in the district court's summary judgment order related to the nature of the disclosure in the prior art. The Munro patent incorporates by reference the entire contents of the Rosenthal disclosure. Ultradent's assertion that Munro "says nothing" about the Rosenthal compositions and merely discloses using the commercial embodiment of the Rosenthal patent is contrary to the rules of practice, which permit incorporation of prior art by reference. *See* United States Department of Commerce, Patent and Trademark Office, *Manual of Patent Examining Procedures* § 608.01(p) (6th ed.1996) (discussing incorporation-by-reference procedures). Because the Rosenthal disclosure is not as limited as the district court found, and because the court's conclusion as to the scope of the Rosenthal disclosure was critical to the court's summary judgment ruling, we reverse the court's ruling on the issue of anticipation with respect to the '303 and '342 patents. We leave it to the district court to determine whether, in light of the proper interpretation of the Rosenthal disclosure, summary judgment should be entered in Life–Like's favor on the anticipation issue with respect to some or all of the '303 and '342 patent claims at issue.

III

■ We next address Life–Like's challenge to the jury's finding that Life–Like has infringed the asserted claims of the '303 and '342 patents. Life–Like argues that the district court erred by denying its motion for judgment as a matter of law (or, alternatively, for a new trial) because the jury's verdict is not supported by substantial evidence. Life–Like does not, however, challenge on appeal the jury's finding that Life–Like has infringed the '006 patent claims. We affirm the district court's denial of Life–Like's motion, because the jury's verdict is supported by substantial evidence. We also hold that Life–Like has failed to demonstrate that the district court abused its discretion in denying Life–Like's alternative motion for a new trial on this issue. Of course, the infringement issue will become moot if the district court

concludes on remand that all of the asserted claims of the '303 and '342 patents are invalid for anticipation.

Under the district court's claim interpretation, Ultradent was required to prove at trial that Life–Like's products contained "about 3.5% to about 12% by weight carboxypolymethylene defined as a slightly acidic vinyl polymer with active carboxyl groups" and that this condition existed at the time the composition was applied to the patient's teeth in accordance with the method of the claims. The parties are in agreement that the only evidentiary basis upon which the jury could have reached the result it did is the testimony of Ultradent's expert witness, Dr. Yost.

Dr. Yost testified that in his opinion Life–Like's accused products contained 3.5% carboxypolymethylene, and that even though Life–Like's composition contained a base, the carboxypolymethylene in Life–Like's solution remained "a slightly acidic vinyl polymer with active carboxyl groups." He explained that "in solution, the ions are free to move around," and the hydrogen ions are free "to dissociate and reassociate with the carboxyl group." For that reason, Dr. Yost explained, the carboxypolymethylene in Life–Like's composition retained active carboxyl groups. Moreover, he testified that even if a base were added to a solution containing 3.5% carboxypolymethylene until the pH rose to 6.3—approximately the pH of Life–Like's composition—there would be no change in the amount of carboxypolymethylene in the solution, as the term carboxypolymethylene was defined by the district court, because the carboxypolymethylene in the solution would still be characterized as a slightly acidic vinyl polymer with active carboxyl groups.

To counter Dr. Yost's testimony, Life–Like offered expert testimony and other evidence that when a base is added to carboxypolymethylene in solution, the carboxypolymethylene reacts to form a solvent-soluble salt. Life–Like therefore argues that in its glycerol-based composition, a significant portion of the carboxypolymethylene is found in the form of a salt rather than in the form of a "slightly acidic vinyl polymer with active carboxyl groups," as is required by the district court's construction of the claims.

As an appellate court, we must view the evidence in "the light most favorable to the party that secured the jury verdict." *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192, 37 USPQ2d 1685, 1690 (Fed.Cir.1996). We must uphold the jury's verdict if it is supported by substantial evidence, *i.e.*, if there is evidence upon which a reasonable jury could have found infringement. *See Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1235, 9 USPQ2d 1913, 1919 (Fed.Cir.1989). Dr. Yost's testimony constitutes substantial evidence of infringement, and for purposes of the motion for a new trial, we cannot say that the district court committed a manifest abuse of discretion in ruling that the great weight of the evidence was not against the verdict. *See Brown v. McGraw–Edison Co.*, 736 F.2d 609, 617 (10th Cir.1984). We therefore uphold the jury's finding of infringement of Ultradent's rights under the '303 and the '342 patents.

## IV

We next consider Life–Like's challenge to the jury's conclusion that claims 1, 11, and 18–19 of the '006 patent are not invalid as being anticipated by the prior art. Life–Like's burden before the jury was to prove invalidity by clear and convincing evidence. Having failed to convince the jury, Life–Like must now establish that no reasonable jury could have reached that conclusion based on the evidence before it. *See Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 863, 26 USPQ2d 1767, 1772 (Fed.Cir.1993). Having reviewed the evidence of record in its entirety, we conclude that Life–Like has failed to satisfy that exacting standard.

Unlike the claims of the '303 and '342 patents, independent method claim 1 and independent composition claim 11 of the '006 patent define the dental bleaching composition not in terms of the percentage weight of the components, but in terms of the composition's viscosity and stickiness. The pertinent portion of independent composition claim 11 reads as follows (independent method claim 1 contains essentially the same limitation):

(a) said matrix material has sufficiently high viscosity and low solubility in saliva

that the matrix material provides for the dental bleaching agent to be in contact with the tooth surfaces over a period of time greater than about 2 hours, thereby providing bleaching of the tooth surfaces, and such that (b) the matrix material is sufficiently sticky to retain and hold said dental tray in place over said teeth for a period of time greater than about 2 hours without any significant mechanical pressure from the dental tray.

The district court interpreted this claim language to mean that "at the end of 2 hours there must be a significant amount of dental bleaching agent remaining in the dental tray and that as a result of the remaining bleaching agent's proximity to a patient's teeth, clinically significant bleaching is taking place" and that "the matrix material must be sufficiently tacky or sticky as to contribute to the retention of a dental tray over a patient's teeth at the end of two hours, and that whatever dental tray is used not exert 'orthodontic' forces on a patient's teeth such that it would cause discomfort."

The parties do not dispute the district court's claim interpretation, nor does Life–Like take issue with the patent's purely functional method of claiming the bleaching composition. Life–Like asserts, however, that the Munro patent (incorporating the Rosenthal patent) anticipates the claims of the '006 patent. To support its contention, Life–Like relies on tests performed by the Loma Linda University School of Dentistry.

There are two sets of Loma Linda tests at issue in which compositions were tested for viscosity and stickiness by measuring the retention capability of the dental tray over time. The first test was described in an inventor's declaration submitted to the Patent and Trademark Office during the prosecution of the '006 patent. The declaration described the composition of the first test as the "Rosenthal Standard Formulation," which "was prepared for testing based on the Rosenthal disclosure." The "Rosenthal Standard Formulation" contained the same ingredients as one of the two examples disclosed in the Rosenthal patent, but it adjusted the amount of carboxypolymethylene upward from 1.0% to 1.5%, it adjusted the amount of

urea peroxide upward, and it adjusted the amount of glycerol downward. The 1.5% carboxypolymethylene formulation was used in the test because that was the percent of carboxypolymethylene at the high end of the most preferred range disclosed in the Rosenthal patent. The test results concluded that the Rosenthal Standard Formulation did not meet the limitations of the claims of the '006 patent.

The second set of Loma Linda tests was performed at the urging of Life–Like during the litigation of this case. Two different formulations were examined. One formulation contained the same ingredients as one of the two examples disclosed in the Rosenthal patent, but this time the amount of carboxypolymethylene was adjusted upward from 1.0% to 3.0%, the amount of urea peroxide was adjusted upward, the amount of glycerol was adjusted downward, and the amount of the base was adjusted upward. The second formulation contained 5.0% carboxypolymethylene and an adjusted amount of each of the other ingredients, including an increased amount of the base.

The Munro patent (incorporating the Rosenthal patent) does not explicitly disclose a dental bleaching composition with viscosity and stickiness levels that satisfy the claims of the '006 patent. To fill that gap, Life–Like points to the second set of Loma Linda tests and asserts that the tests demonstrate that the claimed composition is disclosed in the Munro patent. That evidence is not sufficient, however, to carry Life–Like's burden of showing that the evidence compelled a finding by clear and convincing evidence that Munro anticipated the asserted claims of the '006 patent.

Even if the Loma Linda tests confirm Life–Like's contention that the compositions containing 3% and 5% carboxypolymethylene provide the level of viscosity and stickiness required by the claims of the '006 patent, that does not mean that the claimed matrix material is necessarily described by the Munro patent (incorporating the Rosenthal patent). As Ultradent argues, there are many possible compositions that could be made within the range of carboxypolymethylene concentration (0.05% to 5%) that the Munro

patent discloses. Life–Like's burden at trial was to show that the Munro patent would describe to one of skill in the art the tested combinations, or other combinations meeting the limitations of the claims, from among the many possible candidates. *See, e.g., Merck & Co. v. Biocraft Labs., Inc.,* 874 F.2d 804, 807, 10 USPQ2d 1843, 1846 (Fed.Cir.1989); *In re Kollman,* 595 F.2d 48, 55, 201 USPQ 193, 198 (CCPA 1979); *In re Petering,* 49 C.C.P.A. 993, 301 F.2d 676, 681, 133 USPQ 275, 279 (1962). Life–Like, however, has not satisfied us that it met that burden so plainly that the district court should have rejected the jury's contrary verdict.

Ultradent points to the testimony of its witnesses to support its contention that the Munro patent (incorporating the Rosenthal patent) would not have directed one of ordinary skill in the art to create the Loma Linda compositions or other compositions satisfying the limitations of the claims. Dan Fischer, the named inventor in Ultradent's patents, testified that there were "millions of combinations" of formulations disclosed in the Rosenthal patent. Ultradent's expert witness, Dr. Yost, testified similarly that "you can make anything between .05 and 5 percent [carboxypolymethylene], and that could include thousands of possible combinations." And an Ultradent technical witness responded in the negative to the question whether there is "anything in Rosenthal to suggest which, if any, of the compositions within the ranges taught by him satisfy" the claim limitations of the '006 patent.

Although Life–Like vigorously disputes Ultradent's evidence and contends that it would be elementary for one of skill in the art starting with the Rosenthal compositions to obtain a composition that would meet all the limitations of the '006 patent claims, we are constrained by the record the parties have created. Life–Like has failed to demonstrate that the Loma Linda compositions, or other compositions meeting the claim limitations, are disclosed in the Munro patent (incorporating the Rosenthal patent) and thus has failed to show that the jury's verdict is not supported by substantial evidence. We therefore affirm the district court's denial of both Life–Like's motion for judgment as a matter of law and its motion for a new trial.

## V

■ Life–Like also challenges the district court's rejection of Life–Like's claim that Ultradent's patents are unenforceable because of inequitable conduct. Life–Like's inequitable conduct claim is based on two different factual predicates: the failure to disclose a modified Rosenthal formulation consisting of 5% carboxypolymethylene, and the alleged failure to disclose the complete formula of the commercial embodiment of Ultradent's invention, Opalescence. The district court adopted the conclusion of the jury, acting in an advisory capacity on this issue, that neither the inventor nor his representatives misrepresented or failed to disclose material information to the Patent and Trademark Office in the course of the examination.

The first prong of Life–Like's claim relates to the submission of the Loma Linda test results and the accompanying arguments made to the examiner. The inventor, Dan Fischer, directed an Ultradent chemist to make the Rosenthal formulations for "patenting purposes." The chemist wrote down one formulation that included 5% carboxypolymethylene. Life–Like asserts that the existence of that formulation and any test results that may have derived from testing a composition prepared in accordance with that formulation should have been disclosed to the PTO during examination. Life–Like asserts that a prepared composition would have been material to patentability because Ultradent argued before the examiner that Rosenthal did not teach how to create a composition that contained 5% carboxypolymethylene and had adequate stickiness and bleaching effect. Ultradent submitted the test conducted by Loma Linda, which evaluated a Rosenthal 1.5% carboxypolymethylene composition, but it did not submit any material on the 5% composition.

The district court's finding that Fischer did not fail to disclose material information to the PTO is not clearly erroneous. The chemist who wrote down the 5% formulation testified that he did not recall ever actually mak-

ing the composition. The district court could reasonably have concluded from that testimony and other evidence in the record that the 5% carboxypolymethylene composition was never made and tested. If the composition was never made, it could not have been material to patentability because it was nothing more than a handwritten formulation that neither supported nor contradicted the statements made during prosecution. Accordingly, Fischer's failure to disclose the 5% formulation to the Patent Office cannot form a basis for finding inequitable conduct under the facts as found by the district court. *See Hebert v. Lisle Corp.*, 99 F.3d 1109, 1115, 40 USPQ2d 1611, 1615 (Fed.Cir.1996) ("An applicant can not be held to have acted inequitably for not providing the examiner with information that was not material."); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 940, 15 USPQ2d 1321, 1328 (Fed. Cir.1990) ("Absent materiality, inequitable conduct for failure to disclose can not lie."); *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 698, 218 USPQ 865, 870 (Fed.Cir.1983) (holding that there is no duty to disclose a mere "conception" because it is not material).

Life–Like's second basis for asserting inequitable conduct relates to a declaration that Fischer submitted to the PTO during the prosecution of the '006 patent application. In response to Fischer's filing of the Loma Linda test that compared Opalescence and the 1.5% carboxypolymethylene composition, the examiner issued a final office action in which he again rejected the claims over the prior art. The examiner noted that the Loma Linda test, although showing that Opalescence performed better than the 1.5% carboxypolymethylene composition, still failed to demonstrate that the 1.5% carboxypolymethylene composition did not meet all the limitations of the claims. In response to that request, Fischer submitted a declaration in which he identified the composition of Opalescence.

Life–Like asserts that the declaration erroneously omitted one ingredient of Opalescence and that the omission was material. At trial, Fischer testified that there had been a number of different formulations for Opalescence over the years and that some used the missing ingredient while others did not. He testified that his declaration accurately reflected the formulation of Opalescence at the time of the declaration. Fischer also testified that the missing ingredient merely simplified the manufacturing process and, in the quantities used, had no effect on the viscosity, stickiness, or bleaching capability of the gel. Again, we find that the district court could reasonably have credited Fischer's testimony in drawing the conclusion it did. In the face of disputed versions of the facts, we will not reweigh the evidence on appeal. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1573, 24 USPQ2d 1401, 1413 (Fed.Cir.1992); *Dow Chem. Co. v. American Cyanamid Co.*, 816 F.2d 617, 622 n. 3, 2 USPQ2d 1350, 1354 n. 3 (Fed.Cir.1987).

## VI

▪ Ultradent requests sanctions under Rule 38, Fed. R.App. P. on the ground that Life–Like's appeal is frivolous. We deny Ultradent's request. This is a close case on the merits, and in fact Life–Like has prevailed on a portion of its appeal. Ultradent is plainly wrong in characterizing Life–Like's challenge to the judgment as frivolous, and thus is not entitled to have Rule 38 sanctions imposed against Life–Like.

## CONCLUSION

In summary, we hold, first, that the district court erroneously entered summary judgment against Life–Like on its claim of anticipation with respect to the '303 and '342 patents, and we remand that issue to the district court for further proceedings. Second, we uphold the jury's determination of infringement with respect to the '303 and '342 patents, although the issue of infringement will become moot if the district court on remand should find all of the asserted claims of those two patents invalid. Third, we uphold the jury's verdict that the '006 patent is not invalid. Fourth, we affirm the district court's determination that none of the patents in suit is unenforceable because of inequitable conduct. Finally, we

deny Ultradent's request for sanctions for a frivolous appeal.

Each party shall bear its own costs for this appeal.

*AFFIRMED–IN–PART, REVERSED–IN–PART, and REMANDED.*