**AMERICAN PERMAHEDGE, INC., Plaintiff–Appellant,**

v.

**BARCANA, INC., and National Metal Industries, Defendants–Appellees.**

No. 96–1171.

United States Court of Appeals, Federal Circuit.

Jan. 31, 1997.

Albert L. Jacobs, Jr., Graham & James LLP, New York City, argued, for plaintiff-appellant. With him on the brief was Michael J. Brown.

Richard B. Klar, New York City, argued, for defendants-appellees.

Before RICH, CLEVENGER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

American Permahedge, Inc. (American Permahedge) appeals from an order of the United States District Court for the Southern District of New York granting Barcana, Inc., and National Metal Industries, Inc.'s (National) (Barcana collectively) motion for summary judgment of noninfringement. We affirm.

## I

Summary judgment is permissible when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Even when material facts are in dispute, however, summary adjudication may be appropriate if, with all factual inferences drawn in favor of the nonmovant, the movant would nonetheless be entitled to judgment as a matter of law. *Stark v. Advanced Magnet-*

ics, Inc., 29 F.3d 1570, 1572–73, 31 USPQ2d 1290, 1292 (Fed.Cir.1994). We review a grant of summary judgment de novo. Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co., 66 F.3d 285, 289, 36 USPQ2d 1095, 1098 (Fed.Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996).

We have jurisdiction to review this case pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## II

American Permahedge is the assignee of U.S. Patent No. 4,872,647 (the '647 patent), which relates to artificial shrubbery used to decorate a chain link fence. Barcana, Inc., manufactures artificial greenery for installation in fences, called the Evergreen Hedge, which is distributed by National. American Permahedge commenced this action against Barcana in August 1992, alleging knowing and willful infringement and contributory infringement of claims 1, 4, and 5 of the '647 patent.

The '647 patent discloses an artificial shrubbery that creates the appearance of a hedge when threaded through the holes of a chain link fence. The shrubbery disclosed is composed of individual units (the "branches") consisting of a pair of metal wires twisted together (the "twig") through which are threaded a multitude of stiff, green plastic bristles that resemble evergreen needles (the "needles").

American Permahedge asserts claims 1, 4, and 5 against Barcana's Evergreen Hedge product. Claim 1 is representative (with the claim limitations at issue emphasized):

1. An artificial hedge and/or shrubbery assembly comprising

a chain link fence having a plurality of interlocking wires twisted together at spaced intervals to form a plurality of diamond shaped openings arranged in parallel rows, and

a plurality of camouflage assemblies supported on said fence said camouflage assemblies comprising

a central elongated axial support element and

relatively stiff densely packed *filament means* fixedly carried by said support element and *extending laterally* of the axis thereof,

*said filament means forming a bush-like planar array* that extends along the entire length of said support element,

at least one of said camouflage assemblies being inserted in a selected plurality of rows of openings in said fence such that said support element passes through the openings in said selected rows so that when a plurality of such elements are thus inserted the fence assumes a hedge-like appearance.

Both claims 4 and 5 contain similar limitations as those highlighted above: "laterally extending plastic fibers ... such that said filaments present a generally planar hedge-like array."

Based primarily on American Permahedge's statements made to the United States Patent and Trademark Office during prosecution, the district court held that the description "extending laterally" from the axis of the branch meant that the needles radiate at right angles from the branch. The "filament means forming a planar array" limitation, according to the district court, requires that the branch and the needles radiating therefrom, when viewed edgewise form a thin, flat plane, rather than that the overall hedge form a uniform wall with planar surfaces after several branches are woven into the fence.

We hold that the district court erred in construing the "extending laterally" limitation. However, that error was harmless because the district court correctly construed the "planar array" limitation, and that construction is dispositive of the case. We address each of these limitations in turn.

## III

### A

■■ To prove infringement, the patentee must show that every limitation in the asserted claim is met by the accused product either literally or under the doctrine of equivalents. Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 397, 29 USPQ2d 1767, 1769 (Fed.Cir.1994). We first address the

literal infringement issue with respect to the limitation that the needles "extend laterally of the axis" of the branch. The district court held that the limitation requires that the needles radiate at right angles from the branch, and found noninfringement because the accused Barcana product has the needles radiating at about a 45° angle to the axis of the branch.

In construing a claim limitation, we look to the claim language, the specification and the prosecution history. *Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1580, 36 USPQ2d 1162, 1165 (Fed.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1567, 134 L.Ed.2d 666 (1996). As the district court properly found in reference to The American Heritage Dictionary (2d ed. 1976), the term "lateral" in its usual dictionary usage means "coming from the side." The court properly noted that there is nothing in the dictionary definition that would limit the term "lateral" to "perpendicular."

The specification confirms the above interpretation. The term "extending laterally" is used several times in the specification. The most illuminating passage on the issue is found at col. 4, lines 1–5 (emphasis added):

> Each transverse element itself includes a pair of twisted wires 612 and 614 that support a plurality of densely packed *laterally extending* filaments 616, in all respects similar to filaments 16 described above.

The above passage describes the embodiment of the patent in Fig. 7. As shown in Fig. 7, filaments 616 extend from twisted wires 612 and 614 at an angle of about 45°—definitely not perpendicularly. Thus, it is clear from the above passage that the patentee used the term "laterally extending" based on its ordinary meaning: extending sideways irrespective of the angle.

█ The district court, in reaching a contrary conclusion on the "extending laterally" issue, relied on the following passage from the specification: "Manual fluffing of the filaments 16 will tend to brush out any filaments 16 that remain other than essentially perpendicular from the support axis." The district court also relied heavily on the embodiment shown in Fig. 1 (and the accompanying text)

that shows the needles extending out perpendicularly. However, that embodiment and the accompanying passage do not limit the claim term "extending laterally" to extending perpendicularly. Claims, not the specification embodiments, define the scope of the protection. *See Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 865, 9 USPQ2d 1289, 1299 (Fed.Cir.1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations."). If anything, the text relied on by the district court simply demonstrates that the patentee used the word "perpendicularly" when he meant "perpendicularly."

The district court, in deciding the "extending laterally" issue, seems to have been most influenced by a statement made by American Permahedge during prosecution regarding a prior art patent to Goodridge. The Goodridge patent (U.S. Patent No. 3,343,357) discloses a new method of making an artificial Christmas tree branch. The branch disclosed in Goodridge is essentially a circular brush with the needles radiating in all directions and attached to the stem at an upward angle (rather than perpendicularly as in prior art Christmas tree branches) to simulate real Christmas tree needles more closely. During prosecution, American Permahedge sought to distinguish Goodridge by the following statement (emphasis added):

> In Goodridge the fibers are bunched together in discontiguous clumps, leaving defined spaces between each clump at the root, i.e. where the wires are twisted. Further, *the fibers are bent permanently at an angle to the axis* so that a planar array capable of forming shubbery [sic] is not possible. As a result, Goodridge could not provide a densely packed contiguous planar array simulative of shubbery [sic]. Goodridge provides a tree branch but not shubbery [sic].

The district court interpreted the above statement to mean that the patent in suit could not cover any product that had needles extending at an angle other than 90°. That was error. We think that by the above statement the patentee only represented the Goodridge tree branch as having needles *permanently* bent at a fixed angle, radiating in

all directions so that those needles cannot be flattened out to form a *flat* plane. Thus, as we discuss below, the above passage is pertinent on the "planar array" issue, but not on the "extending laterally" issue. We therefore conclude that the "extending laterally" limitation simply means extending from the side, with no limitations on the angle.

### B

■ We next turn to the "planar array" issue. The dispositive question is whether the "planar array" limitation means that: (a) the branches and needles form a thin, flat plane, or (b) the overall hedge (comprised of several rows of branches) forms a plane when the branches are woven into the fence. The accused Barcana product has the needles radiating in many directions (like a circular brush) from the stem. However, when the accused products are woven into the fence, the overall finished look is more or less a uniform, planar surface. Thus, if the "planar array" limitation refers to a branch with its needles forming a flat plane, then the accused product does not infringe literally.

Claim 1, in pertinent part, reads (emphasis added):

said *filament means* forming a bush-like *planar array* that extends along the entire length of said support element, ... so that when a plurality of such elements are thus inserted the *fence assumes a hedge-like appearance.*

Thus, the claim requires that the filament means (which are the needles extending from the branch) form a planar array. The claim also requires that the fence, after the insertion of the branches, assume a hedge-like appearance, not a hedge-like, *planar* appearance. Accordingly, we agree with the district court's claim construction that the "planar array" limitation refers to the filament means forming a flat plane before they are woven into the fence and not the overall look of the fence after the artificial greenery is woven into the fence.

The specification confirms the above interpretation. All of the embodiments shown in the specification show the needles forming a flat plane, and none of them shows needles

radiating in all directions, as they do on a circular brush. See Figs. 1, 2, 6, and 7 of the '647 patent. Furthermore, the following passage clearly defines the meaning of "planar array" (emphasis added):

A plurality of mini-leaves or flat privets 524 [the needles] extend essentially laterally of a respective stem 522 as shown. Similar to element 10, element 510 has, *when viewed edgewise,* a flat, planar construction.

'647 patent, col. 3, ll. 50–54. Both elements 10 and 510 refer to the needles. Thus, the specification shows that the needles form a flat plane when viewed edgewise.

The file history further supports this interpretation. As quoted in the preceding "extending laterally" discussion, American Permahedge unambiguously represented to the Patent Office in response to the Goodridge prior art rejection that a Christmas tree branch configuration having needles radiating in all directions (as in the Goodridge patent) could not constitute a "planar array." The accused Barcana product, on the "planar array" issue, seems remarkably similar to the Christmas tree branch of Goodridge. The Barcana product has needles that are not flat, but rather, protrude at various angles in a three-dimensional arc. In much the same way that Goodridge's needles did not form a flat plane in the patentee's own words, the needles of the accused product do not. The "planar array" limitation is not met literally by the accused product.

### IV

■■ We next turn to the issue of whether the "planar array" limitation is met under the doctrine of equivalents. Even if literal infringement does not lie, the accused product may still infringe under the doctrine of equivalents if, and only if, the differences between the claimed and accused products are insubstantial. *See Hilton Davis Chem. Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512, 1518, 35 USPQ2d 1641, 1645 (Fed.Cir.1995) (*in banc*), *cert. granted,* —— U.S. ——, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996) (No. 95–728). However, the application of the doctrine of equivalents is limited by the doctrine of prosecution history estoppel, which bars a

patentee from asserting as an equivalent subject matter previously surrendered during prosecution of the patent application. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579, 34 USPQ2d 1673, 1679 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). Application of the doctrine of prosecution history estoppel raises a question of law which we review *de novo. Id.*

▪ The district court relied on the same prosecution history statement made by American Permahedge regarding the "planar array" limitation and the Goodridge patent discussed above, and held that prosecution history estoppel precludes a finding of infringement under the doctrine of equivalents. We agree with the district court. American Permahedge provided an unequivocal definition of the term "planar array," and specifically stated that an artificial Christmas tree branch that has needles extending in all directions is incapable of forming a "planar array." A competitor reviewing the file history must be able reasonably to rely on American Permahedge's representations and conclude that a product that has needles radiating in all directions does not meet the "planar array" limitation either literally or under the doctrine of equivalents. *Cf. Dolly, Inc.,* 16 F.3d at 400, 29 USPQ2d at 1771 ("[T]he concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims.").

▪ American Permahedge, however, contends there should be no estoppel with respect to the claims in suit because the statements relied on by the district court were made in response to the Examiner's rejection of application claims 2 and 5, which were canceled. Prosecution history estoppel, however, is not limited to the claims with respect to which the applicant's statements were made. *Southwall Techs.,* 54 F.3d at 1584, 34 USPQ2d at 1683. Rather, clear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance, may create an estoppel. *Id.* at 1583, 34 USPQ2d at 1682. Such an estoppel arose when American Permahedge distinguished the prior art Goodridge patent on the basis of the "planar

array" limitation and explained what cannot constitute a "planar array." Furthermore, in the context of literal infringement, it is well-settled that identical claim terms used in different claims must be interpreted consistently. *Id.* at 1579, 34 USPQ2d at 1679. Similarly, under the doctrine of equivalents, we see no reason to assign different ranges of equivalents for the identical term used in different claims in the same patent, absent an unmistakable indication to the contrary. This is particularly so because, during prosecution, the applicant may amend his claims to avoid the risk of estoppel.

### V

Because the accused product does not meet the "planar array" limitation literally or under the doctrine of equivalents, we affirm the district court's holding of noninfringement.

*AFFIRMED.*