**THE RIVAL COMPANY, Plaintiff,**

v.

**SUNBEAM CORPORATION, et al., Defendants.**

No. 95–1179–CV–W–SOW.

United States District Court, W.D. Missouri, Western Division.

Dec. 8, 1997.

John S. Conner, Thomas Fisher, Shughart, Thompson & Kilroy, Daniel Dibble, Bryan B. Myers, Lathrop & Gage, Kansas City, MO, for Plaintiff.

Harvey Kaplan, Shook, Hardy & Bacon, Kansas City, MO, Kenneth Jurek, McDermott, Will & Emery, Chicago, IL, for Defendant.

*ORDER*

SCOTT O. WRIGHT, Senior District Judge.

Before this Court are plaintiff's Rival's Motion for Summary Judgment (Doc. # 93) and defendant's Sunbeam's Motion for Summary Judgment (Doc. # 99). For the reasons discussed below, defendant's Motion for Summary Judgment (Doc. # 99) is granted and plaintiff's Motion for Summary Judgment is denied (Doc. # 99).

### I. *Background*

Fine distinctions have been drawn between two inventions in order for there to be a conflict in this case.

Rival's Patent, submitted by a group of five inventors, was originally filed in 1983. The PTO, in an Office Action, rejected Rival's first patent application as being "obvious" under 35 U.S.C. § 103. Rival then amended several of the claims. In a second Office Action, the PTO again rejected Rival's patent application. The PTO did leave all of the claims still pending. As the age old expression goes, "three times a charm," Rival again amended the application. The PTO finally approved Rival's Patent (number 4,509,412).[1] In Rival's final patent, the PTO cited to nineteen related patents.

■ Unhindered by Rival's patent, Sunbeam sought and received a patent as well.[2] Sunbeam's products are covered by patent number 5,400,701.[3] Although the patent was actually issued to John C.K. Sham, for sake of simplicity, the patent will be referred to as the Sunbeam patent. The PTO, in considering whether to issue the Sunbeam patent, expressly considered the Rival patent and over twenty other patents.

### II. *Discussion*

Issues in this case, and patent law in general, required this Court to examine many legal problems for the first time.[4] The following issues arose in this court's decision to grant summary judgment for the defendant:

A. Claims at Issue;

B. *Markman* Hearing; and

C. Summary Judgment.

### A. Claims at Issue

The Rival has alleged violations of the following claims set forth in patent 4,509,412:

**Claim 1:**

A steam cooking utensil comprising:

[A] a base;

[B] a boiling water reservoir defined by the base;

[C] a heater, mounted in the base to heat liquid in the boiling water reservoir;

[D] thermostat means, mounted in the base and coupled to the heater, for

1. The following abstract is that of the Rival/Whittenburg patent:

   "A steam cooking utensil is disclosed which includes a base; a boiling water reservoir and a condensate trough defined by the base; and a heater disposed centrally to the boiling water reservoir, mounted in the base, and coupled to a thermostat also mounted in the base. The condensate trough is disposed in annular relationship to the boiling water reservoir. A food tray defining a imperforate central surface and an array of peripheral apertures is supported such that the imperforate surface is vertically aligned with the boiling water reservoir and the array of peripheral apertures is vertically aligned with the condensate trough. A cover having a bottom opening defined by a rim is positioned over the food tray, condensate trough and boiling water reservoir, such that the rim cooperates with an outer peripheral lip of the condensate trough to form a seal. The disclosed steam cooking utensil operates to cook food quickly, cleanly and efficiently. The boiling water reservoir remains free from condensate residues even after boiling dry,

and the food product remains free from excess moisture."

2. The fact that Sunbeam has a patent does not preclude infringement on the Rival patent. *Rolls–Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed.Cir.1986).

3. The abstract of the Sunbeam/Sham patent reads as follows:

   "A steam cooking appliance which enables food to be steam cooked while preventing condensate residue to be re-boiled again. The steam cooking appliance of the present invention provides a water containment basin defining a water reservoir and a condensate basin wherein the water reservoir is isolated from the condensate basin. The steam cooking appliance operates to enable the water reservoir to remain free from condensate residue even after boiling dry."

4. This Court's research can find no other judge in the Western District of Missouri who has had the opportunity to conduct a *Markman* hearing.

switching off the heater when all the liquid in the boiling water reservoir has evaporated therefrom;

[E] a condensate trough, defined by the base and thermally insulated from the heater; and

[F] a food tray comprising an imperforate surface and a drainage surface, said food tray supported above the reservoir and trough such that said imperforate surface is aligned with the boiling water reservoir, said drainage surface is aligned with the condensate trough, and water flows from the imperforate surface to the drainage surface into the condensate trough, said reservoir, trough and tray cooperating substantially to prevent the flow of water from the imperforate surface into the reservoir.

**Claim 2:**

The invention of claim 1 wherein the food tray comprises a surface shaped to facilitate radial drainage to the drainage surface and into the condensate trough.

**Claim 3:**

The invention in claim 1 wherein the food tray defines a central baffle, vertically aligned with the heater, said baffle operative to direct heated water back to the vicinity of the heater in order to accelerate steam formation.

**Claim 6:**

The invention of claim 1 wherein the imperforate surface defines a multiplicity of raised surfaces effective to facilitate radial drainage through the drainage surface into the condensate trough.

**Claim 31:**

A steam cooking utensil comprising:

[A] means for defining a boiling water reservoir;

[B] a heater mounted adjacent a central portion of the reservoir to heat water contained in the reservoir;

[C] means for supporting food to be steamed above the reservoir, said supporting means defining an imperforate surface above the heater; and

[D] a baffle which extends downwardly from the supporting surface over the heater, said baffle shaped to define a partially enclosed region of the supporting surface in alignment with the heater;

[E] said baffle effective to impede the outward flow of water, heated by the heater and splashed by the heater against the partially enclosed region, radially away from the partially enclosed region.

Claims 1 and 31 are independent claims. Claims 2, 3 and 6 are dependent claims, being dependent upon Claim 1.

### B. *Markman* Hearing

■ On November 18, 1997, this Court held a *Markman* hearing. *See Markman v. Westview Instruments*, 52 F.3d 967 (Fed.Cir. 1995) *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). *Markman* sets forth a two-step process for resolving patent infringement claims. The first step requires that claim construction (determination of the meaning and scope of the claims) is an issue of law for the district judge to decide. *Id.* at 979. The second step is that of the jury looking at the claims and the court-determined definitions in order to determine whether an infringement of the patent took place.

Prior to the *Markman* hearing, this Court required the parties to brief the type of evidence to be heard at a *Markman* hearing, to identify any disputed language in the claims, the type of evidence used to resolve any disputes and to offer proposed definitions of the claims. The proposed definitions of both parties greatly assisted this Court during the claim construction phase.

■ Both Rival and Sunbeam agreed with that only "intrinsic" evidence should be used to construe the disputed claims. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). Intrinsic evidence is made up of (1) the claims,[5] (2) the patent specification, and (3) the prosecution history.[6]

---

**5.** The words in a claim should be given their ordinary and customary meaning. *Vitronics*, 90 F.3d at 1576.

**6.** Both parties were also required, prior to the *Markman* hearing to submit the prosecution history (or file wrapper) on each of their patents.

*Markman,* 52 F.3d at 979. However, the claims should always be the first place a court looks to determine the scope of the claim. *Vitronics,* 90 F.3d at 1576.

■ Extrinsic evidence is anything external to the patent, *i.e.* expert testimony, dictionaries, technical treatises and articles. *Markman,* 52 F.3d at 980. Even the plaintiff's product is extrinsic evidence. *SRI Int'l v. Matsushita Elec. Corp. of America,* 775 F.2d 1107, 1118 (Fed.Cir.1985). Extrinsic evidence is only to be relied upon to resolve any ambiguity in a disputed claim term. *CVI/Beta Ventures, Inc. v. Tura L.P.,* 112 F.3d 1146, 1153 (Fed.Cir.1997); *Vitronics,* 90 F.3d at 1583.

■ The theory behind the admission of intrinsic evidence, and the exclusion of extrinsic evidence, has been explained by the Federal Circuit[7] in the following manner:

> competitors are entitled to review the public record, apply established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention .... Allowing the public record to be altered or changed by extrinsic evidence ... would make this right meaningless.

*Vitronics,* 90 F.3d at 1583.

Even though both parties agreed that only intrinsic evidence should be used to determine the claim construction, both parties attempted to influence this Court through the use of extrinsic evidence. Defendant Sunbeam used plaintiff Rival's product in the hearing and attempted to enter into evidence Sunbeam's products. During argument before this Court, Rival referred the court to dictionary definitions and expert testimony. However, this Court did not use any of this extrinsic evidence to determine the claim construction. In fact, this Court did not go beyond the actual claim language and patents in order to construe the disputed claims in the following manner:

1. "[A] boiling water reservoir defined by the base": a receptacle that holds boiling water. The water may be at one time fresh, non-boiling water, but the water must actually come to a boil in the reservoir. To be defined by the base, the base must create or form the outline of the shape of the boiling water reservoir.

2. "[T]hermostat means ... for switching off the heater when all the liquid in the boiling water reservoir has evaporated therefrom": a thermostat that automatically switches off the heater when all of the water in the reservoir has boiled dry.

3. "[A] condensate trough, defined by the base": a receptacle for collecting condensate. To be defined by the base, the base must create or form the outline of the shape of the condensate trough.[8]

The above construction of the claims for all purposes decided summary judgment.

### C. Summary Judgment

■ Two different theories of recovery have been presented to this Court by Rival: literal infringement and doctrine of equivalents.[9] "In order for there to be infringement, *each and every limitation* set forth in a patent claim must be found in the accused product, either literally or under the doctrine of equivalents." *CVI/Beta Ventures,* 112 F.3d at 1161 (emphasis added); *See also American Permahedge, Inc. v. Barcana, Inc.,* 105 F.3d 1441, 1443 (Fed.Cir.1997). After examining the summary judgment standard, both literal infringement and doctrine of equivalents will be discussed.

#### 1. Standard

The Federal Circuit has opined that summary judgment is just as appropriate in a patent case as in any other case. *O.I. Corp. v. Tekmar Co., Inc.,* 115 F.3d 1576, 1580 (Fed.Cir.1997); *Brenner v. United States,*

---

7. The Federal Circuit has exclusive jurisdiction over appeals from all United States District Courts in patent litigation. *Cardinal Chemical Co. v. Morton Intern., Inc.,* 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993).

8. These claim constructions will be hereinafter referred to as the *"Markman* definitions."

9. Normally, the defendant will contest the validity of the patent. *See Ultradent Products, Inc. v. Life–Like Cosmetics, Inc.,* 127 F.3d 1065 (Fed.Cir. 1997). However, validity is not a defense in this case.

773 F.2d 306, 307 (Fed.Cir.1985). The following standard has been set forth by the Federal Circuit for reviewing motions for summary judgment:

> A grant of summary judgment under Fed. R.Civ.P. 56 is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir.1989). Since one principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses," Fed.R.Civ.P. 56 requires that the nonmoving party "designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). There can be "no genuine issue as to any material fact" where the nonmoving party's proof is deficient in meeting an essential part of the applicable legal standard, since such failure renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

*London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1537 (Fed.Cir.1991).

Additionally, all factual inferences must be drawn if favor of the non-movant. *American Permahedge,* 105 F.3d at 1442 (citation omitted). Under that standard, this Court must evaluate the plaintiff's two claims for recovery: literal infringement and doctrine of equivalents.

### 2. Literal Infringement

Both parties have moved for summary judgment on the claim of literal infringement. Rival claims that there is no genuine issue of material fact and that summary judgment should be granted in their favor. Sunbeam advances the identical argument, but with the outcome in their favor.

■ A party is liable for patent infringement if only a single claim is infringed. *Panduit Corp. v. Dennison Mfg. Co.,* 836 F.2d 1329, 1330 n. 1 (Fed.Cir.1987). "Obviously, the absence of a single limitation in a patent from an accused product would require a judgment of no literal infringement." *Stutz Motor Car of America, Inc. v. Reebok Int'l Ltd.,* Nos 96–1062, 96–1083, 1997 WL 258883, at *6 (Fed.Cir. May 16, 1997). Stated another way, "each and every limitation ... must be found in the accused product" for there to be a finding of infringement. *CVI/Beta Ventures,* 112 F.3d at 1161.

In the post-*Markman* era, this Court must apply the definitions of the claims to Sunbeam's products. The only claims from Rival's patent at issue are 1, 2, 3, 6 and 31.

■ On claim 1, if any one limitation is not infringed by Sunbeam's product, there will be no infringement. *See CVI/Beta Ventures,* 112 F.3d at 1161. In fact, Sunbeam's product does not infringe Rival's patent on two of this Court's *Markman* definitions.

First, the "boiling water reservoir," as defined by this Court, does not exist in Sunbeam's product. *See* Rival Patent, Claim 1, Element B. A "boiling water reservoir" holds boiling water. *See Markman* definition 1. Four times in Rival's Claim 1 there is mention of "boiling water" or "heat liquid in the boiling water reservoir." Sunbeam's product drains water from a reservoir into a flow-through heater and is then steamed. Thus, there is no genuine issue of material fact to support Rival's claim of infringement and Sunbeam's product does not infringe upon Rival's patent, Claim 1, Element B ("boiling water reservoir"). Under Federal Circuit law, the failure of Sunbeam to infringe upon this element is enough to support Sunbeam's Motion for Summary Judgment, however, the remaining claim of infringement will also be examined.

The second Element of Claim 1 in which Sunbeam fails to infringe is Element D. A "thermostat means," as defined by this Court, must automatically switch off when all of the water in the reservoir has boiled dry. *See Markman* definition 2. Rival's Element D is a "means-plus-function" clause.[10] The federal Circuit has interpreted such clauses in the following manner:

> and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

---

**10.** 35 U.S.C. § 112, ¶ 6, provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof,

[A means-plus-function], as is well-documented, was intended to permit use of means expressions without recitation of all the possible means that might be used in a claimed apparatus. The price that must be paid for use of that convenience is limitation of the claim to the means specified in the written description and equivalents thereof. Similarly, a step for accomplishing a particular function in a process claim may also be claimed without specificity subject to the same price. But claiming a step by itself, or even a series of steps, does not implicate section 112, ¶ 6. Merely claiming a step without recital of a function is not analogous to a means plus a function.

*O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1583 (Fed.Cir.1997) (citations omitted).

Sunbeam's product fails to infringe upon Rival's claim of a "thermostat means." Sunbeam's steamer lacks a thermostat that switches off when the water in the reservoir boils dry. Sunbeam's steamer has a timer that controls the steaming mechanism. Under Rival's patent, the amount of water controls the steaming mechanism. Therefore, there is no genuine issue of material fact left for the jury to decide and summary judgment must be granted for Sunbeam.

Claims 2, 3 and 6 are dependant upon Claim 1. Since there is no infringement on the independent claim (Claim 1), there can be no infringement on the dependant claims (Claim 2, 3 and 6). *See London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir.1991) (citation omitted). Summary judgment must therefore be awarded in favor of Sunbeam on these claims

Claim 31 is the only remaining claim. Element A of Claim 31 again makes reference to the "boiling water reservoir." This Court's *Markman* definition requires that the reservoir "holds boiling water." *See Markman* definition 1. As previously discussed, the Sunbeam product does not have a reservoir that holds boiling water. Additionally, Claim 31, Element D mentions that the heater is used "to heat water contained in the reser-

voir." Again, Sunbeam's product does not heat the water in the reservoir. Finally, Claim 31, Elements D and E make reference to a baffle. The Sunbeam product makes no use of a baffle. In that there is no genuine issue of material fact remaining, summary judgment is granted in favor of Sunbeam on Claim 31.

In applying the *Markman* definitions to each of the disputed claims, there is no genuine issue of material fact and summary judgment is granted in favor of the defendant Sunbeam on all claims of literal infringement.

### 3. Doctrine of Equivalents

Even when there has been a finding of no literal infringement, an alternative theory of recovery exists for the plaintiff, the doctrine of equivalents. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, —— U.S. ——, ——, 117 S.Ct. 1040, 1049, 137 L.Ed.2d 146 (1997). The doctrine of equivalents comes into play "if, and only if, the differences between the claimed and accused products are insubstantial." *American Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1445 (Fed.Cir.1997). The Supreme Court has recently described the doctrine in the following manner:

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety. So long as the doctrine of equivalents does not encroach beyond the limits just described, or beyond related limits to be discussed infra, ..., we are confident that the doctrine will not vitiate the central functions of the patent claims themselves.

*Warner-Jenkinson*, —— U.S. at ——, 117 S.Ct. at 1049.

According to the Supreme Court, the doctrine of equivalents is meant to prevent insubstantial [11] and unimportant changes to the

---

11. An example of an insubstantial change is when the accused product includes elements that perform substantially the same function in substantially the same way to achieve substantially the same result as the invention set forth in the claims. *Warner–Jenkinson*, —— U.S. at ——, 117 S.Ct. at 1054.

patent. *Id.* at ——, 117 S.Ct. at 1054; *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 610, 70 S.Ct. 854, 857, 94 L.Ed. 1097 (1950); *Singer Mfg. Co. v. Cramer,* 192 U.S. 265, 286, 24 S.Ct. 291, 299, 48 L.Ed. 437 (1904).

Sunbeam's patent listed the Rival patent as prior art. "The nonobviousness of the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial." *Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1570 (Fed.Cir.1996) (citing to *Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112 (Fed.Cir.1996) (Nies, J., Additional Views); *National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1192 (Fed.Cir.1996) ("The fact of separate patentability is relevant, and is entitled to due weight.")).

Sunbeam's steamer has essentially the same function as the Rival steamer. However, over 20 other patents were listed as prior art in Sunbeam's patent. Obviously, there are several patents on steamers that all perform essentially the same function, *i.e.* steaming food. However, "[i]t is not enough if both devices perform the same function when it is apparent from the patent drawings that the devices are differently construed and perform that function in different ways." *Engel Indus., Inc. v. Lockformer Co.,* 96 F.3d 1398, 1407 (Fed.Cir.1996). The function of steaming the food is completed in extremely different manners. Sunbeam sends the water from the reservoir through tubing to be "flash" steamed and then sent directly to the food. The tubing and "flashing" is a stark contrast to Rival's system of heating the entire reservoir to achieve steam.

Consequently, the differences between the two inventions are substantial. There is no genuine issue of material fact left in the doctrine of equivalents and summary judgment is granted in favor of the defendant.

### III. *Conclusion*

Accordingly, it is hereby

ORDERED that defendant's Motion for Summary Judgment (Doc. # 99) is granted as to both the literal infringement and doctrine of equivalents claims. It is further

ORDERED that plaintiff's Motion for Summary Judgment (Doc. # 93) is denied. It is further

ORDERED that all pending Motions in Limine (Doc.'s # 98, # 114, # 115, # 116, # 118, # 120, # 122, # 124 and # 126) are dismissed as being moot.